UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CIVIL DIVISION
DOCKET NO. _____

| | |
|---|---|
| SOC-SANDLAKE, LLC, | )<br>) |
| Plaintiff | )<br>) |
| vs. | ) CASE NO.<br>)<br>) JURY TRIAL DEMANDED |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Defendant. | )<br>)<br>)<br>) |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff, SOC-SANDLAKE, LLC, by and through the undersigned counsel, hereby sues the Defendant, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, and alleges:

### **INTRODUCTION**

1. Plaintiff, SOC-SANDLAKE, LLC ("Sandlake") is a Florida Limited Liability Company that operates a number of shared office space, coworking, and virtual office facilities whose principal place of business and headquarters is located in Orlando, Florida.

2. Defendant, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA ("Travelers") is a Connecticut corporation with its principal place of business in New York, New York engaged in the business of providing insurance.

3. The property at issue in this case is owned by or under the care, custody or control of Sandlake located at 6135 Park South Drive, Charlotte, NC.

4. This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. 1332 because there is complete diversity between Plaintiff and Defendant and the amount in controversy is in excess of $75,000.

5. Plaintiff has complied with all conditions and obligations under the Policy regarding its right to coverage by Defendant for its claim or Defendant has waived such rights.

## THE LOSS

6. On May 18, 2023 a fire caused damage to Sandlake's rented space at 6135 Park South Drive, Charlotte, NC. The source of the fire was a portable diesel generator that spontaneously caught fire at an adjacent building under construction. The fire at the adjacent building was significant and more than one life was lost to the fire.

7. The damage to Sandlake's rented space from the fire and resulting smoke was significant and resulted in Sandlake's customers and tenants being unable and or unwilling to continue renting space. Sandlake lost income from the space being unusable subsequent to the fire.

8. Sandlake's office space suffered significant fire and smoke damage which required repairs.

9. Sandlake ultimately spent $123,677.09 repairing its rented space after the fire.

## INSURANCE CLAIM

10. Sandlake purchased an insurance policy from Travelers with a policy period of April 15, 2023 to April 15, 2024 for a leased property located at 6135 Park South Drive, Ste. 510, Charlotte NC. 28210. A copy of the insurance policy is attached as "Exhibit A."

11. Plaintiff's policy provided coverage for the fire, water, and smoke damaged property.

12. Plaintiff's policy provided coverage for lost income, extra expense, and damage to Business Personal Property.

13. Travelers investigated the loss and initially denied any payment for either lost income or damage to property on December 9, 2024.

14. Sandlake demanded that the lost income, extra expense, and damage to Business Personal Property be determined by appraisal on May 13, 2025.

15. Travelers responded on May 28, 2025 and agreed to have the lost income and extra expense portions of the claim determined via appraisal[1] but rejected having the Business Personal Property loss determined via appraisal.

16. Travelers rejected appraisal as to the Business Persona Property claim and wrote:

    Disputed Possible loss

    We have requested documentation from [Sandlake] regarding business personal property loss that has not been provided. In the original lease, the landlord agreed to pay $12.00 per square foot ($131,640) for improvements to the location on behalf of [Sandlake]. Information regarding this payment and what it entailed is critical to determining if coverage is available under the policy for betterments and improvements made by our insured. Without this information, coverage cannot be confirmed and therefore is not appraisable under the policy's conditions.

17. In response to Travelers rejection of appraisal and refusal to come to a coverage determination, Plaintiff responded through counsel on June 9, 2025:

    In your most recent letter dated May 28, 2025 you request, a second time, documentation that our client, SOC Sandlake, LLC, provide what total their landlord paid of the $12/SF ($131,640) in improvements on page 29 of their agreement from2004, and provide supporting information. In our letter dated May 7, 2025 as a response to your original requested dated April 25, 2025 we stated that our client is not in possession of this information and as such cannot provide. This still holds true as our client does not have documentation from 21 years ago. I respectfully suggest no business regularly maintains historical records from 20 years in the past. A courtesy copy of our May 7, 2025 response is attached.

---

[1] The appraisal of the lost income and extra expense claim is ongoing as of the time of filing this lawsuit.

18. Notwithstanding multiple attempts to get Travelers to issue a coverage decision, Traveler's refused to advise its coverage position and refused to make payment for Plaintiff's covered Business Personal Property loss.

## THE LEASE BETWEEN SANDLAKE AND ITS LANDLORD

19. Plaintiff entered into a lease with Two SouthExecutive LLC on March 3, 2004 for a term running until July 31, 2009 to rent a portion of the 5th floor.

20. The lease provided requirements and determined the rights and obligations of the Landlord and Tenant in the event of a fire:

> 15. DAMAGE BY FIRE OR OTHER CASUALTY
>
> . . .
>
> 15.04 TENANT'S RESTORATION
>
> If all or any part of the Premises are damaged by fire or other casualty and this Lease is not terminated, Tenant shall promptly and with due diligence repair and restore the leasehold improvements previously installed by Tenant pursuant to this Lease, subject to changes pursuant to plans approved by Landlord, acting Reasonably. Tenant shall have discretion as to whether it replaces its personal property in the Premises, but Landlord shall not be responsible for the replacement of any personal property or other property of tenant.

21. Sandlake was responsible for restoring tenant improvements after fire damage.

22. The lease provided the obligations as to insurance:

> 17.01 TENANT'S INSURANCE
>
> Tenant, at its expense, shall maintain in force during the Term each of the following:
>
> . . .
>
> B. The equivalent of ISO Special Form Property Insurance covering Tenant's property (including fixtures, leasehold improvement and equipment) located in the Premises, providing protection to the extent of one hundred percent (100%) of the replacement cost of such property, less a commercially reasonable deductible, not to

> exceed $10,000.00, and such other property insurance against such other perils and in such amounts as Landlord may from time to time reasonably require…
>
> . . .
>
> 17.02 LANDLORD'S INSURANCE
>
> Landlord, at its expense (but subject to Landlord's right to pass the cost through to tenants, including Tenant, as part of Operating Costs), shall maintain in force during the Term each of the following:
>
> . . .
>
> B. The equivalent of ISO Special Form Property Insurance covering the Complex, providing protection to the extent of one hundred percent (100%) of the replacement cost of such property, less a commercially reasonable deductible, not to exceed $25,000.00, and such additional property insurance against such other perils and in such amounts as Landlord may elect to obtain.

. . .

23. The lease specifically provided that it was Sandlake who was responsible for insuring the property that was fire and smoke damaged.

24. "Exhibit A" to the lease provided that the Tenant may make improvements to the space and Landlord would contribute up to $131,640 towards the cost of the build out of the rented space:

> 2. Landlord's Work: Landlord shall deliver the Premises in "as-is" condition.
>
> 3. Landlord's Allowance: Landlord shall contribute $12.00 per square foot of the Rentable Area of the Premises ($131,640.00) toward the cost of the improvements to the Premises. In addition, Landlord shall pay Manager seven thousand dollars ($7,000) for construction administration. Landlord shall pay invoices upon receipt and approval of Tenant for work performed and due for payment. Upon completion of such work, Tenant shall furnish Landlord with contractor's affidavits and full and final waivers of lien and receipted bills covering all labor and materials expended.

    Landlord shall make commercially reasonable efforts to provide new finishes, including wallcovering, paint and carpet, to the fifth (5th) floor common area hallway, elevator lobby and elevator doors concurrent with the improvements to the Premises. Landlord shall make commercially reasonable efforts to provide updates to elevator abs and to add hard surface ceilings in front of Tenant's elevator or lobby entrances. Landlord shall make commercially reasonable efforts to provide a common area vending machine area.

25. "Exhibit B" to the lease provided in relevant part:

    20. All decorating, carpentry work or any labor required for the installation of Tenant's equipment, furnishing or other property shall be performed at Tenant's expense, subject to Landlord's prior written approval of plans and contractors. This shall apply to all work including, but not limited to: installation of telephone or telegraph equipment, electrical devices and attachments, and all installations affecting floors, walls, windows, doors, ceilings, equipment or any other physical feature of the Building. None of this work shall be done by Tenant without Landlord's prior written approval, and Landlord shall have the right to specify use by Tenant of specific Building-approved contractors.

26. "Addendum B" to the lease provided in relevant part:

    17. Waiver of Landlord's Lien

    Landlord expressly waives any statutory or common law landlord's lien (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against any fixtures, equipment, and other personal property of Tenant in the Demised Premises. Landlord agrees to execute and deliver, promptly upon Tenant's request therefor at any time or times hereafter, any reasonable instruments evidencing the foregoing waiver.

    . . .

    27. Additional Tenant Allowance

    Landlord hereby agrees to provide Tenant with additional Allowance of: $24,427.70 ("Additional allowance"), which Tenant may apply, at Tenant's sole discretion toward fixtures, furnishing

and equipment, or other business purposes as determined by Tenant. Such Additional Allowance shall be paid to Tenant immediately upon Tenant's written request to Landlord for such Additional Allowance.

As a condition for the Additional Allowance and conditioned upon Tenant's receipt of the Additional Allowance, Tenant hereby releases and indemnifies Landlord from any obligations to pay Tenant's Broker any commissions under this Lease;

Tenant shall, if so requested by Landlord, deliver a written acknowledgement and agreement by Tenant's Broker, releasing Landlord from any obligations to pay Tenant's Broker commissions or broker fees and waiving any and all rights it may have relating to the Landlord's payment of a commission to Tenant's Broker relating to this Lease, and acknowledging that Tenant's Broker shall look solely to the Tenant for any such commissions or payment rights.

27. Sandlake was responsible for the cost of building out the tenant space under the lease.

## INSURANCE COVERAGE

28. Plaintiff's policy provided in pertinent part:

   A. COVERAGE
   We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

   . . .

   b. Business Personal Property located in or on the buildings described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the describe premises, including:
   (1) Property owned by you and used in your business;
   (2) Property of others that is in your care, custody or control;
   (3) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
   (a) Made a part of the building or structure you rent, lease or occupy but do not own; and

(b) You acquired or made at your expense but are not permitted to remove;

. . .

29. Travelers provides coverage for Business Personal Property in three relevant situations:

    a) The damaged property was owned and used by Sandlake;

    b) The damaged property was in the care, custody or control of Sandlake;

    c) The damaged property was a tenant improvement or betterment, made a part of the building leased, and was acquired by Sandlake or made at Sandlake's expense.

30. The damaged property fell into one or more of the coverages described in the policy, Travelers owes Sandlake for the damaged property.

## BREACH OF CONTRACT

31. Travelers had an obligation under the insurance policy to pay Sandlake the cost of repairing and replacing the damaged business personal property under the insurance policy as it had either:

    a) a use interest as a tenant in fixtures, alterations, installation or additions as they were made a part of the building its leased and it acquired those improvements and betterments or made them at its own expense; or

    b) the business personal property was owned by the landlord but in Sandlake's care, custody or control.

32. Travelers failed to pay Sandlake insurance proceeds for the damaged business personal property.

33. Travelers breached the insurance policy by failing to pay Sandlake the cost of repairing and replacing the damaged business personal property less the applicable deductible.

34. Travelers owes Sandlake damages under the insurance policy for its failure to pay for the damaged business personal property.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, court costs, interest, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable as a matter of law.

LAW OFFICE OF TYLER J. SKITT, LLC
s/Tyler J. Skitt
TYLER J. SKITT
NC Bar No. 41599
404 N. Laurel Ave.
#22
Charlotte, NC 28204
Phone (803) 354-2347
Fax (803) 973-6076
tyler.skitt@skittlaw.com
*Attorney for Plaintiff*